UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION



CLIFFORD THOMPSON, HERMAN )
FRANKENBERGER, KATHY )
WOOLDRIDGE, MIN CHONG )
BALLARD, and MARY BROOKS, )
)
Plaintiffs, )
)
v. ) CASE NO. 3:06-cv-0050-DFH-WGH
)
EVANSVILLE VANDERBURGH )
COUNTY BUILDING AUTHORITY, )
DAVID RECTOR, in his individual )
and official capacity, and the CITY OF )
EVANSVILLE, )
)
Defendants. )

ENTRY ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

After extended pretrial maneuvering, what this five-plaintiff, eight-claim

case boils down to is this – only two of the five named plaintiffs (Mary Brooks and

Herman Frankenberger) continue to maintain any claims based on federal law.

Those claims are for First Amendment retaliation and deprivation of property

without due process contrary to the Fourteenth Amendment brought against the

Evansville Vanderburgh County Building Authority ("EVCBA") and its director

David Rector.  Plaintiffs Brooks and Frankenberger also assert a state law claim

for false imprisonment against the EVCBA, Rector, and the City of Evansville

("City"). Defendants have moved for summary judgment on all claims.  As

explained below,  the court grants summary judgment for the EVCBA and Rector

on the merits of Brooks' and Frankenberger's federal law claims.  The court relinquishes supplemental jurisdiction over Brooks' and Frankenberger's state law false imprisonment claim and dismisses that claim without prejudice.

Plaintiffs Brooks and Frankenberger are former employees of the EVCBA. They worked as housekeepers, and their employment was governed by a collective bargaining agreement between the EVCBA and the Teamsters Local Union No. 215.  The contract was in effect through December 31, 2005, and was extended by agreement until midnight on January 23, 2006.  On January 24, 2006, the EVCBA Board voted to terminate the contract and to present its last offer for continued employment to the covered employees, including Brooks and Frankenberger.  Rector presented those terms to the employees on January 25, 2006.  The employees were asked, one by one, to meet with Rector and Fred Taylor of the EVCBA, to review the terms of the EVCBA's employment offer, and to choose between either accepting those terms and keeping their jobs, or rejecting those terms and losing their jobs.  Frankenberger decided not to accept the EVCBA's terms.  His employment was terminated immediately.  Brooks agreed to the terms and returned to work, but her employment was terminated two days later for insubordinate conduct.

Now facing summary judgment, both Frankenberger and Brooks maintain that the EVCBA and Rector violated the First Amendment by terminating their employment for exercising their right to freedom of speech, and violated the

Fourteenth Amendment by depriving them of a property interest in their jobs without due process of law.  They also claim that they were falsely imprisoned by the EVCBA, Rector, and the City of Evansville when the EVCBA's terms were presented to them on January 25, 2006.  In support of their motion for summary judgment on these claims, the EVCBA and Rector argue that Frankenberger's and Brooks' terminations had nothing to do with their exercise of their free speech rights – Frankenberger was terminated when he refused to accept the EVCBA's terms for continued employment, and Brooks was terminated for insubordination. The EVCBA and Rector also argue that even if Frankenberger and Brooks had a property interest in their jobs under the collective bargaining agreement, that interest terminated when the collective bargaining agreement expired at midnight on January 23, 2006.  All defendants also argue that Frankenberger and Brooks were not falsely imprisoned when the EVCBA's terms of employment were presented to them on January 25, 2006.

*Procedural History*

The history of this case has been unusual and prolonged, primarily because the five named plaintiffs divided into two groups represented by two different law firms.  On March 13, 2006, the five plaintiffs – Clifford Thompson, Herman Frankenberger, Kathy Wooldridge, Min Chong Ballard, and Mary Brooks – filed a complaint in this court against the EVCBA and David Rector in his individual and official capacity for First Amendment retaliation and deprivation of a property

interest under the Fourteenth Amendment.  At the time, all the plaintiffs were represented by the law firm of Haskin, Lauter, and LaRue ("the Haskin firm"). About two months later, in May 2006, the Haskin firm withdrew from representing three of the plaintiffs (Thompson, Ballard, and Wooldridge) but continued to represent Frankenberger and Brooks.  Dkt. 15, 16.  Frankenberger and Brooks then moved to sever their case from that of Thompson, Wooldridge, and Ballard, and moved to amend their complaint to add allegations of age discrimination under the federal Age Discrimination in Employment Act and state law claims of false imprisonment and conversion against the EVCBA and Rector.  Dkt. 17.  They also sought leave to add the City of Evansville as a defendant for purposes of their false imprisonment claim.   The Haskin plaintiffs' motion to file an amended complaint was granted, but their motion to sever their claims from Thompson, Ballard, and Wooldridge was denied.  Dkt. 26.

The law firm of Kendall-Hahn ("the Kendall firm") entered the case on behalf of plaintiffs Thompson, Ballard and Wooldridge.  Dkt. 24.  Following the same path as the Haskin firm plaintiffs, the Kendall firm plaintiffs moved to amend their complaint to bring additional claims against the EVCBA and Rector of age discrimination under the ADEA, conversion, and false imprisonment common to all the Kendall plaintiffs, claims of Title VII race discrimination on behalf of plaintiffs Thompson and Ballard, a claim of Title VII national origin discrimination on behalf of plaintiff Ballard, and claims of Title VII sex discrimination on behalf of plaintiffs Wooldridge and Ballard.  Dkt. 27.  They also moved to add the City of

Evansville as a defendant for purposes of their false imprisonment claims.  The Kendall firm plaintiffs' motion to amend their complaint was granted.  Because, at the pleading stage, many of the Haskin firm plaintiffs' and Kendall firm plaintiffs' allegations and operative facts appeared identical, the plaintiffs' claims remained joined as discovery progressed.  Dkt. 39.

On September 12, 2007, defendant City of Evansville moved for summary judgment against all the plaintiffs on the one cause of action they had asserted against the City – false imprisonment.  Dkt. 59.  On December 31, 2007, the EVCBA and Rector filed for summary judgment against all the plaintiffs on all the plaintiffs' claims – First Amendment retaliation (all plaintiffs), Fourteenth Amendment property deprivation (all plaintiffs), age discrimination (all plaintiffs), false imprisonment (all plaintiffs), conversion (all plaintiffs), race discrimination (plaintiffs Thompson and Ballard), national origin discrimination (plaintiff Ballard), and sex discrimination (plaintiffs Wooldridge and Ballard).  Dkt. 91.  Also, the EVCBA and Rector  argued  that, regarding the claims plaintiffs brought against the EVCBA, and to the extent that plaintiffs sued Rector in his official capacity, the plaintiffs cannot show that a municipal custom, practice, or policy caused a deprivation of the plaintiffs' constitutional rights, and that Rector is entitled to qualified immunity on the individual capacity claims against him. Dkt. 91. These motions for summary judgment are now before the court.  The Haskin firm plaintiffs (Brooks and Frankenberger) responded to the defendants' motions for

summary judgment.  Dkt. 80, 145.  The Kendall firm plaintiffs' response to defendants' motions for summary judgment was due on July 17, 2008.  Dkt. 150.

On July 17, 2008, rather than responding to summary judgment, the Kendall firm plaintiffs filed a motion to sever their claims from the claims of the Haskin firm plaintiffs.  Dkt. 152.  In support of their motion, the Kendall firm plaintiffs asserted that it was their intention to dismiss some of the claims against the named defendants and to bring additional allegations against Teamsters Local 215.  The Kendall firm plaintiffs asserted that they would be prejudiced if they were required to respond to summary judgment before having an opportunity to dismiss certain claims and to join parties, that the defendants would be prejudiced if they had to reply to claims that would be dismissed, and that the Haskin firm plaintiffs would be prejudiced if their case were delayed any further. The court conferred with counsel for all parties on August 20, 2008 and required both sets of plaintiffs to declare which claims they were maintaining against which defendants, and to file any motions to amend their complaints on or before September 5, 2008.  Dkt. 155.  The court denied the Kendall firm plaintiffs' motion to sever.

On September 3, 2008, the Haskin firm plaintiffs (Frankenberger and Brooks) advised the court that they were maintaining only their First Amendment retaliation claims, their Fourteenth Amendment property deprivation claims, and their false imprisonment claims.  Dkt. 156.  They abandoned their age

discrimination claims and their conversion claims, and did not move to amend their complaint.  The Kendall firm plaintiffs (Thompson, Wooldridge, and Ballard) dropped all claims against defendant Rector and the City of Evansville and all claims against the EVCBA alleged in their First Amended Complaint.  Dkt. 160. They moved to amend their complaint to add the Teamsters as a defendant, and to bring claims of breach of contract against the EVCBA and the Teamsters, false imprisonment against the EVCBA, negligence against the Teamsters, negligent misrepresentation against the Teamsters, and intentional misrepresentation, fraud, deceit, and constructive fraud against the Teamsters.  Dkt. 160, Ex. 2.  The court hereby grants the Kendall firm plaintiffs' motion for leave to file their amended complaint, which leaves the court without an independent basis for subject matter jurisdiction over any of the Kendall firm plaintiffs' claims.

Now that the smoke has cleared at last, the only federal claims brought and maintained by any plaintiff against any defendant are plaintiff Brooks' and plaintiff Frankenberger's allegations of First Amendment retaliation and Fourteenth Amendment property deprivation against the EVCBA and Rector.  The court finds that the EVCBA and Rector are entitled to summary judgment on those remaining federal law claims.   The court therefore relinquishes supplemental jurisdiction over Brooks' and Frankenberger's remaining state law claim and dismisses it without prejudice.  The court lacks any independent basis for subject matter jurisdiction over the claims that Ballard, Wooldridge, and Thompson seek to assert with their amended complaint.  The court sees no reason

to attempt to exercise supplemental jurisdiction over the claims they actually wish to pursue.  Those plaintiffs may pursue their claims in state court, where this matter belongs.[1]

### Summary Judgment Standard

Summary judgment must be granted if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is material if resolving the factual issue might change the suit's outcome under the governing law.  *Id.*  The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party.  *Id.* at 249.

When ruling on the motion, the court must view all the evidence in the record in the light most favorable to the non-moving party and must resolve all factual disputes in the non-moving party's favor.  See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).  The essential question is

---

[1]On September 22, 2008, Teamsters Local 215, which is not yet a party, filed a memorandum (Docket No. 161) opposing the Kendall firm plaintiffs' motion for leave to file a second amended complaint adding the local as a defendant. Those objections are better addressed to a state court in which those plaintiffs may file a new lawsuit.  This court will not attempt to shape such a future lawsuit outside the scope of its own jurisdiction.

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

*Material Facts Not in Dispute[2]*

In 2005, the employment of the EVCBA service department employees was governed by a Collective Bargaining Agreement ("CBA") between the EVCBA and the Teamsters.  That CBA was scheduled to expire on December 31, 2005.  In the months leading up to the expiration of the CBA, some of the plaintiffs in this matter were involved in interviews with the local media.

The first of these television interviews took place and aired sometime before December 25, 2005.  Frankenberger Dep. 131-34.  Frankenberger was present for the interview and appeared on screen, but he did not speak.  He testified that he believed the purpose of the interview was to inform the public of the service department's intent to strike if a new CBA was not agreed upon, and that those who were interviewed discussed the union's desire for fair wages and better working conditions.  *Id.* at 131, 133-34.

---

[2]Because of the procedural and jurisdictional posture of this case, the court's recitation of the undisputed material facts omits many of the facts relevant to Ballard's, Wooldridge's, and Thompson's allegations, as well as facts relevant to Brooks' and Frankenberger's false imprisonment claim.

A second television interview took place some time later.[3]  Frankenberger and Brooks were present, along with other members of the union.  Brooks Dep. 84.  Brooks' image appeared on screen when the interview was broadcast, but neither Brooks nor Frankenberger spoke during the interview.  *Id.* at 86.  The union members who were interviewed spoke about the working conditions at the EVCBA and the contract negotiations.  Brooks Dep. 86.

At midnight on January 23, 2006, after an extension of the CBA and the failure of contract negotiations, the CBA expired.  Rector Dep. Ex. O.  On January 24, 2006, the EVCBA's Board of Directors met and ratified the CBA's termination and unanimously approved the implementation of the EVCBA's final offer for the employees' continued employment.  Pl. Ex. J.  The board also decided that those employees who rejected the EVCBA's offer would be terminated.  *Id.*  These terms had been previously presented in contract negotiations but had been rejected by the union membership.  The board requested that Rector, as the general manager of the EVCBA, present those terms and conditions to the service department employees as soon as possible.  *Id.*

---

[3]Brooks believed that the second interview occurred "after the third vote." Brooks Dep. 84.  Thompson testified that the second interview occurred "after the second vote."  Thompson Dep. 157.  The parties have not specified when the "second" or "third" votes occurred, but the precise timing of the interviews is not material for purposes of the summary judgment motion.  Defendants do not dispute that the interviews took place before Frankenberger and Brooks were terminated.

On January 25, 2006, the EVCBA called a mandatory meeting of its service department employees to determine which of those employees wanted to remain employed under the EVCBA's terms and conditions.  Rector Dep. 228-29, 233, 236-37, 248-49, 261-62;  Frankenberger Dep. 23-24, 31-33;  Brooks Dep. 22-23, 44-45.  The meeting began at approximately 4:30 p.m. in the "break room" of the Evansville-Vanderburgh County Civic Center.  Frankenberger Dep. 24-25; Brooks Dep. 26. The employees were not told before the meeting what the purpose or subject of the meeting was.  Frankenberger Dep. 45; Brooks Dep. 22-26, 30.  The meeting took place during the employees' regular hours of work, and the employees who attended were fully paid for their time.  Frankenberger Dep. 53, 56; Brooks Dep. 25, 46, 146.

Prior to the meeting, the EVCBA asked the Evansville Police Department to provide police officers to be present to keep the peace.  Rector Dep. 238-239. Although they were present, the EPD officers in attendance were not in charge of the  meeting.  Frankenberger Dep. 57; Brooks Dep. 47-48; Rector Dep. 307.[4]

As they arrived in the break room for the meeting, Rector told the service department employees to sit down, turn off their cell phones, and remain seated until they were called individually.  Rector Dep. 236-37; Frankenberger Dep. 26,

---

[4]Further details regarding the police officers' presence and actions on January 25, 2006 are not relevant to Frankenberger's and Brooks' federal claims, so those facts are not recited here, nor are other details relevant only to Frankenberger's and Brooks' state law false imprisonment claim.

36, 45; Brooks Dep. 23-24, 31.  If they needed to go to the restroom, they were instructed to ask permission and to leave their cell phones behind.  Rector Dep. 237, 293; Brooks Dep. 26.  The employees were not permitted to communicate with their union representatives or attorneys.  Rector Dep. 235-38, 246, 248-49; Pl. Ex. E.  After he gave the instructions, Rector asked the employees if they had any questions, but no one did.  Rector Dep. 237;  Frankenberger Dep. 47; Brooks Dep. 34.  The EVCBA had a written employment policy, dating from January 2005, disallowing the non-emergency use of personal cell phones during working hours.  Thompson Dep. Ex. 1.

The employees were called individually and then taken to the security office by Larry Sparks of the EVCBA to meet with Rector and with Fred Taylor, also of the EVCBA.  Rector Dep. 236-37; Brooks Dep. 31; Taylor Dep. 174.  The door was closed, and inside, the employees were presented with a one-page document outlining the EVCBA's offer of terms and conditions of employment.  Rector Dep. 259-60; Brooks Dep. 41-42; Frankenberger Dep. 30-32.  The document included a waiver of "any and all claims, lawsuits, actions, grievances, whether known or unknown, arising from the [employee's] employment with the [EVCBA]."  Pl. Ex. E.  The employees were asked either to accept the terms of employment by signing the document, or to reject the terms of employment by refusing to sign.  Rector Dep. 259-61.  If the employees accepted the terms of employment, they returned to work.  Rector Dep. 248-49. If they rejected the terms of employment, their employment was terminated and they were escorted from the Building Authority's

property by an EPD officer.  Taylor Dep. 113, 131-33, 145; Rector Dep. 248-49, 277.

Plaintiff Brooks was called for her individual meeting after waiting fifteen or twenty minutes in the break room.  Brooks Dep. 31, 38.  Brooks did not have a cell phone on January 25, 2006.  Brooks Dep. 37.  When she was called to the security office, Brooks signed the document Rector gave her and agreed to the terms of employment offered by the EVCBA.  Taylor Dep. 158, 184-185; Brooks Dep. 44.  After signing the document, Brooks was told to wait in the "time clock room" for further instruction.  Brooks Dep. 44.  She kept her job but was fired two days later, on January 27, 2006, for insubordination after an incident involving Fred Taylor.  Brooks Dep. 99, 105-12; Taylor Dep. 159-163.

After waiting approximately an hour, Frankenberger entered the security office at approximately 5:30 p.m.  Frankenberger Dep. 29-30, 41.  Only Frankenberger, Rector, and Taylor were present for that meeting.  Frankenberger Dep. 30, 58, 68; Taylor Dep. 174.  Rector gave Frankenberger the one page document outlining the EVCBA's terms and conditions and asked him to read the document and sign if he agreed.  Frankenberger Dep. 30-31.  Frankenberger refused to sign the document.  Rector Dep. 301; Frankenberger Dep. 31.  Upon his refusal, Frankenberger left the room and was escorted by a police officer through the service entrance to his car at approximately 5:45 p.m.  Frankenberger Dep. 32-33, 41.

Although the EVCBA Board had ratified the termination of the CBA on January 24, 2006, the EVCBA continued to collect union dues from the service department employees in the months of January, February, and March 2006.  Pl. Ex. L.  Also, after he was terminated, Frankenberger was interviewed on the radio about the circumstances of his termination.  Frankenberger Dep. 147.

*Discussion*

I.   *First Amendment Retaliation Claim*

Brooks and Frankenberger contend that they were terminated by the EVCBA and Rector for exercising their First Amendment rights by engaging in protected speech.  The EVCBA and Rector argue that the employees' comments did not rise to the level of protected speech and that, in any case, all of the service department employees, whether they engaged in protected speech or not, were treated in the same way.  All received the same offer and were terminated if they rejected that offer.  Thus, the defendants argue that Brooks and Frankenberger are unable to satisfy their *prima facie* case of First Amendment retaliation.  The court agrees, and their claim fails.

Plaintiffs have no direct evidence of retaliatory motive.  To establish a *prima facie* case of First Amendment retaliation, the plaintiffs must present evidence that: (1) their speech was constitutionally protected; (2) they have suffered a deprivation likely to deter free speech; and (3) their speech was at least a

motivating factor in the employer's action.  See *George v. Walker*, 535 F.3d 535, 538 (7th Cir. 2008).  If the plaintiffs succeed in meeting their burden to present evidence sufficient to satisfy their *prima facie* case, the burden shifts to the defendants to produce evidence that the same decision would have been made in the absence of the protected speech.  *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006).  If the defendants carry that burden, the plaintiffs then must offer evidence that the defendants' proffered reasons for the decision were pretextual and that retaliatory animus was the real reason for the decision.  *Massey*, 457 F.3d at 717.

The first and the third of the prongs of a First Amendment retaliation claim are at issue here.[5]  The EVCBA argues that Frankenberger's and Brooks' participation in the publicity surrounding the contract negotiations was not constitutionally protected.  In the two television news reports, Frankenberger and Brooks appeared on camera (Frankenberger twice, Brooks once) but did not

---

[5]The plaintiffs attempt to turn the burden of proof at summary judgment on its head by asserting that "contrary to well established summary judgment standards, [the defendants] have failed to produce any undisputed material facts to support their argument with respect to Plaintiff's [sic] First Amendment Claim." Then they assert that defendants should be precluded from presenting any facts or argument regarding plaintiffs' First Amendment claim because "[a]rguments not raised in an opening brief are waived." Pl. Br. 13; citing *Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir. 1990).  However, the plaintiffs have, at all times, the burden of establishing their *prima facie* case. In moving for summary judgment, the defendants are not obligated to present evidence negating the plaintiffs' claims, but may simply point out the absence of evidence supporting the claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Also, the defendants clearly addressed the plaintiffs' First Amendment retaliation claim in their opening brief.  Plaintiffs' assertion that defendants have waived such an argument is groundless.

speak.  Frankenberger Dep. 131-34; Brooks Dep. 84, 86.  The people who spoke in the television interviews spoke about the EVCBA working conditions and the labor contract negotiations.  Frankenberger Dep. 133-34; Brooks Dep. 86.[6]

The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern.  See *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).  The court first must determine whether the employee spoke as a citizen on a matter of public concern.  *Id.* at 418.  Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record, and the "public concern" element is satisfied if the speech can fairly be said to relate to a matter of political, social, or other concern to the community, rather than merely a personal grievance of interest only to the employee.  *Connick v. Myers*, 461 U.S. 138, 146-48 (1983).

Here, the plaintiffs claim that their television appearances related to working conditions at the EVCBA and the union negotiations that were then ongoing.  Frankenberger Dep. 133-34; Brooks Dep. 86.[7]  Although the plaintiffs

---

[6]After his termination, Frankenberger also took a speaking role in a radio interview.  Frankenberger Dep. 147.  By virtue of its timing,  this radio interview could not have influenced the EVCBA's decision to terminate him, and it cannot support plaintiffs' *prima facie* First Amendment retaliation case.

[7]The defendants have pointed out that Frankenberger and Brooks did not actually speak on camera, but defendants do not attempt to argue that those on-camera appearances in silent support of individuals who were speaking was not
(continued...)

have failed to provide transcripts of the interviews or any further information about what was said in the interviews, the plaintiffs' description of the purpose of their appearance is sufficient at this stage to support their contention that they were appearing as citizens to speak on a matter of public concern.  See *Bartnicki v. Vopper*, 532 U.S. 514, 525, 535 (2001) (for First Amendment purposes, intercepted telephone conversation regarding ongoing union negotiations was a matter of public concern); see also *Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir. 2006) (deputy sheriff spoke on a public matter as citizen because he made a public statement as a union representative concerning a personnel issue); *Geregorich v. Lund*, 54 F.3d 410, 415 (7th Cir. 1995) (noting that union-organizing efforts have been recognized, in a broad sense, as relating to matters of public concern).

Brooks' and Frankenberger's First Amendment claim fails because the undisputed evidence shows that plaintiffs cannot prove their terminations were motivated by their appearances in media interviews.  See *Mullin v. Gettinger*, 450 F.3d 280, 284-85 (7th Cir. 2006).  To avoid summary judgment, the plaintiffs must come forward with evidence that would allow a reasonable jury to find, by a preponderance of the evidence, that protected First Amendment activity was a motivating factor in their termination.  See *Spiegla v. Hull*, 371 F.3d 928, 942-43

---

[7](...continued)
"speech" for First Amendment purposes.  Consider, for example, silent participation in a public march to express a view on a matter of public concern. Such conduct is certainly protected by the First Amendment.

(7th Cir. 2004).  Instead of bringing forth evidence to support their claim, they attempt to shift their burden on this prong to the defendants by implying that their burden to provide competent evidence sufficient to demonstrate that their speech was a motivating factor in the defendants' decision is actually the defendants' burden to show that they would have made the same decision in the absence of the protected speech.  Pl. Br. 14.  However, these steps in the process are not interchangeable, and the court will not shift any part of the plaintiffs' *prima facie* burden to the defendants.

Plaintiffs Brooks and Frankenberger have failed to establish their burden on the third prong of their *prima facie* case of First Amendment retaliation.  They have not brought forward any evidence from which a reasonable jury could conclude that their television appearances were a motivating factor in their terminations.  All of the service department employees – whether they participated in the interviews concerning the union negotiations or not – were given the same offer on January 25, 2006.  Frankenberger declined that offer and was terminated along with several others who did not speak or appear in the media.  Brooks accepted that offer and, in spite of her on-camera appearance, was not terminated.  Although she was terminated only two days later, she does not offer any evidence to suggest that she was fired for any other reason than the one given by the EVCBA and Rector – gross insubordination.  It would not be possible for a reasonable jury to conclude from this record that Frankenberger's and Brooks'

television appearances were a factor that motivated the EVCBA's actions. Accordingly, their First Amendment retaliation claims fail as a matter of law.

II.     *Fourteenth Amendment Claim*

To claim a property interest protected by the Fourteenth Amendment, "a person . . . must have more than a unilateral expectation of [the claimed interest]. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).   Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."   *Id.*; see also *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (holding that a property interest also can be created through less formal rules or through "mutually explicit understandings").   They also can be created and defined by contract.   *Miyler v. Village of East Galesburg*, 512 F.3d 896, 898 (7th Cir. 2008), citing *Roth*, 408 U.S. at 577.   A collective bargaining agreement providing that a public employee may be terminated only for good cause is sufficient to establish a property interest in continued employment.   See, *e.g.*, *Fittshur v. Village of Menomonee Falls*, 31 F.3d 1401, 1405 (7th Cir. 1994); *Kivett v. Marion County Sheriff's Dept.*, 2007 WL 906470, *11 (S.D. Ind. March 22, 2007) (Tinder, J.). While the CBA between the EVCBA and the Teamsters provided such a property interest to Brooks and Frankenberger while it was still in effect, both were fired after it had expired.   Nevertheless, plaintiffs contend that the CBA

gave them a property interest in their continued employment on January 25, 2006 and beyond.[8]

By its terms, the CBA expired on December 31, 2005, and the union and the EVCBA agreed to temporary extensions that ended at midnight on the night of January 23, 2006.  Plaintiffs contend that the defendants have not offered evidence to support their assertion that the contract extension had expired as of January 24, 2006.  Pl. Br. 16-17.  However, plaintiffs do not dispute the evidence that the EVCBA Board acted on January 24, 2006 to ratify the termination of the extension and informed the union that the CBA had been terminated.

Instead, plaintiffs attempt to bolster their argument that the CBA was still in effect by relying on hearsay statements allegedly made by Rick Voyles, a union representative, prior to the 2005 holiday season to union members present to vote on the proposed contract.  Pl. Br. 17; citing Frankenberger Dep. 89-90.  Even if this hearsay testimony were admissible to support the plaintiffs' case on summary

---

[8]Frankenberger was terminated on January 25, 2006 when he refused to accept the EVCBA's offered terms and conditions of continued employment. Brooks was terminated on January 27, 2006 for insubordination after an altercation with a supervisor.  The defendants argue that Brooks does not purport to challenge the process by which she was terminated.    Although the circumstances of their terminations were different, the decisive facts are the same for both Brooks and Frankenberger.  Both were service department employees whose employment with the EVCBA was governed by a CBA until midnight on January 23, 2006 when the CBA expired.  They were terminated thereafter without process.  Their claims may be resolved by settling one common, dispositive question – whether they had a property interest in their jobs after the CBA expired.

judgment, and it is not, it does not support the plaintiffs' assertion that the CBA was in effect anytime after January 24, 2006.  According to Frankenberger's recollection, Voyles informed the union members that if they were allowed to return to work on January 3, 2006, they could assume that a contingency contract was in place.  Frankenberger Dep. 90.  Frankenberger did not claim that Voyles told him anything about the duration of the assumed contingency agreement.  Consistent with Voyle's hearsay statement that the union members could assume that a contingency agreement was in place as of January 3, 2006, the undisputed material facts demonstrate that as of January 24, 2006, that contingency agreement had expired, and the EVCBA board had voted to ratify the termination of the CBA.

Frankenberger and Brooks also contend that the EVCBA continued to deduct their union dues for the months of January, February, and March 2006.  Pl. Br. 17-18.   Plaintiffs fail to offer any explanation regarding how the EVCBA's deduction of union dues could legally revive the terminated CBA.  At most, this evidence demonstrates that these plaintiffs were still members of the union after the CBA and their employment were terminated.  The evidence does not support plaintiffs' argument that they had a property right in continued employment by virtue of the expired CBA.  Here, the undisputed material facts demonstrate that on January 24, 2006, the EVCBA Board ratified the termination of the CBA, and that on January 25, 2006, Frankenberger, Brooks, and the other service department employees were offered the EVCBA's terms for their continued

employment.   Plaintiffs Brooks and Frankenberger have failed to carry their burden of presenting material evidence from which a reasonable jury might conclude that they had a property interest in their jobs by virtue of the expired CBA such that the EVCBA was required to provide them with due process before terminating their employment.   This claim also fails as a matter of law.

*Conclusion*

For the foregoing reasons, plaintiff Frankenberger's and plaintiff Brooks' claims of First Amendment retaliation and Fifth Amendment deprivation of property without due process are dismissed on the merits.  Having dismissed the only claims over which the court has original jurisdiction, the court also relinquishes supplemental jurisdiction over these plaintiffs' remaining state law claim of false imprisonment, and, accordingly, dismisses this claim without prejudice.  See 28 U.S.C. § 1367(c)(3).  The court also grants the motion for leave to file an amended complaint filed by plaintiffs Thompson, Wooldridge, and Ballard which leaves the court without a basis for original jurisdiction over their claims.  The court will not exercise supplemental jurisdiction over their claims.  Final judgment will be entered accordingly.


So ordered.


Date: September 23, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

John H. Haskin
HASKIN LAUTER & LARUE
jhaskin@hlllaw.com

Mark M. Holdridge
HUME SMITH GEDDES GREEN & SIMMONS
mholdridge@humesmith.com, m.holdridge@hotmail.com

David L. Jones
BOWERS HARRISON LLP
dlj@bowersharrison.com, nona@bowersharrison.com, lauren@bowersharrison.com

Michael Charles Kendall
KENDALL & HAHN
sjatlaw@aol.com

Meghan Uzzi Lehner
HASKIN LAUTER & LARUE
mlehner@hllglaw.com

Paul Anthony Logan
HASKIN LAUTER & LARUE
plogan@hlllaw.com

Samuel Morris
GODWIN MORRIS LAURENZI & BLOOMFIELD P.C.
smorris@gmlblaw.com

Robert W. Rock
BOWERS HARRISON LLP
rwr@bowersharrison.com,angela@bowersharrison.com

Andrew P. Wirick
HUME SMITH GEDDES GREEN & SIMMONS
awirick@humesmith.com,Lendris@humesmith.com